| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | NOT FOR PUBLICATION |
|---|---|
| LUIS RODRIGUEZ,<br><br>         Petitioner,<br><br>– against –<br><br>WARDEN OF CLINTON CORRECTIONAL FACILITY,<br><br>         Respondent. | **MEMORANDUM & ORDER**<br><br>13-CV-3505 (ERK) (LB) |

KORMAN, J.:

  I assume familiarity with the underlying facts and circumstances of this case. Briefly, after a trial by jury, petitioner Luis Rodriguez was convicted of two counts of robbery in the first degree, one count of attempted robbery in the first degree, and two counts of criminal possession of a weapon in the second degree. *People v. Rodriguez*, 98 A.D.3d 530, 530 (N.Y. App. Div. 2d Dep't 2012). The convictions arose from the September 30, 2007 robbery of the Moonshine Bar, although petitioner was acquitted at the same trial of robbing the Bait & Tackle Bar which took place the week before the Moonshine robbery. *Id.* Rodriguez was sentenced to concurrent prison terms of 25 years on the robbery counts and 15 years on the attempted robbery count. Lieberman Aff. ¶ 10, ECF No. 5 (Page ID #23). He also received a sentence of five years for the two weapons possession counts, to be served consecutively with the other sentences. *Id.*

  The Appellate Division upheld petitioner's robbery and attempted robbery convictions over several challenges, including those the petitioner now argues in his petition for a writ of habeas corpus, although it vacated the petitioner's weapons possession convictions, holding that the prosecutor "failed to adduce legally sufficient evidence." *Rodriguez*, 98 A.D.3d at 532-33.

1

The New York Court of Appeals denied leave to appeal. *People v. Rodriguez*, 20 N.Y.3d 935 (2012).

Rodriguez filed this petition for habeas corpus alleging that the Due Process Clause was violated when the trial court denied his request to call an expert on eyewitness identification to testify on his behalf, that the trial court should have disallowed an eyewitness identification of the petitioner after an inadvertent "show up" identification at the police precinct, and that the court erred in refusing to suppress allegedly involuntary statements the petitioner made to the police. Pet. Writ Habeas Corpus, ECF No. 1 (Page ID #4-5).

## DISCUSSION

*1. Eyewitness Identification Expert*

Rodriguez contends that the trial court wrongly denied his request to present expert testimony on eyewitness identifications, thus violating his due process right to present a defense. Petitioner's lawyer moved before trial for permission to call an expert on the issue of mistaken identification. Hearing Tr. 11-12, Oct. 14, 2009, ECF No. 5-5 (Page ID #843-44). Relying on *People v. LeGrand*, 8 N.Y.3d 449 (N.Y. 2007), the trial judge denied petitioner's motion because it found that the expert testimony would not speak to an issue "beyond the ken of the average juror." Hearing Tr. 13-15, Oct. 21, 2009, ECF No. 6-1 (Page ID #929-31). The Appellate Division affirmed on the ground that there was sufficient corroborating evidence connecting petitioner to the crime to obviate the need for expert testimony under New York law. *Rodriguez*, 98 A.D.3d at 532.

The Supreme Court has never held that a defendant has a constitutional right to call an expert witness to testify about eyewitness identification. *Hearns v. Artus*, No. O8-CV-192 (NGG), 2010 WL 2653380, at *11 (E.D.N.Y. June 23, 2010); *Mims v. Woods*, No. 08-CV-2270 (JG), 2008 WL 4458133, at *3 (E.D.N.Y. Oct. 2, 2008); *Paccione v. New York*, 353 F. Supp. 2d

358, 370 (E.D.N.Y. 2005). The case that comes closest to providing support for petitioner's argument is *Ake v. Oklahoma*, 470 U.S. 68, 78 (1985), which held that "when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a State provide access to a psychiatrist's assistance on this issue if the defendant cannot otherwise afford one." *Id.* at 74. There are a number of issues going beyond the precise holding in *Ake* that are the subject of conflicting lower court decisions that have not been resolved by the Supreme Court. *See* Wayne R. LaFave et al., *Criminal Procedure* § 11.2(e) 644 (3d ed. 2007). Among those issues are: "whether the *Ake* ruling is limited to capital cases," *id.* at 645; the varying application of "*Ake*'s threshold requirement that the defendant make a preliminary showing that his mental condition at the time of the offense is 'likely to be a significant factor' at trial," *id.* at 646; and whether the defendant is entitled to an "independent expert," *id.* at 649. Moreover, it is unclear whether the *Ake* holding applies to other experts beyond psychiatrists. *Id.* at 654.

Nevertheless, even if *Ake* applied here, the failure to allow petitioner to call an expert on eyewitness identification did not violate the Due Process Clause. The evidence of the petitioner's participation in the robbery aside from the eyewitness identification was overwhelming. While two persons present during the robbery identified petitioner in court, Trial Tr. at 196-97, 256-57 (Page ID #1113-14, 1173-74), the remaining evidence included the petitioner's statements to police admitting his involvement in the robbery, *id.* 996-97 (Page ID #1914-15); petitioner's face and neck tattoos matched those witnesses described on the robber, *id.* at 194-95 (Page ID #1111-12); a vehicle seen in the vicinity of the robbery was registered to petitioner's common-law wife, *id.* at 561 (Page ID #1478); a search of the vehicle revealed a gun and black ski mask similar to those used in the robbery (though not by petitioner), *id.* at 622,

3

1001 (Page ID #1539, 1929); and video taken before and during the robbery showing an individual that witnesses identified as the petitioner, *id.* at 270-74 (Page ID #1187-91).

There is yet more circumstantial evidence of the petitioner's guilt. Specifically, two weeks after the robbery of the Moonshine Bar, the bartender of the Bait & Tackle—another bar in the neighborhood which had been robbed on September 23, 2007 in an event for which the petitioner was charged and acquitted—called the police to report that a person had seen a man whom the person believed to be the subject of a wanted poster pertaining to the Moonshine robbery. When the officers arrived at the Bait & Tackle, the bartender told them he had seen a man who matched the description of the sketch of one of the Moonshine robbers. He told the officers that the man had entered the bar with a female, had headed toward the bathroom door on which there was a sketch of the robber, and then had immediately left the bar just before the police arrived, but that the female was still inside. One of the officers knew about the Moonshine robbery and had viewed a copy of a police sketch of one of the men who had robbed the Moonshine Bar. The bartender pointed the officers in the direction from which the man had run from the bar. They drove in that direction and soon saw someone running down the street. Shortly thereafter, the officers found the petitioner—who matched the sketch of the robber—lying underneath a van parked along the side of the street.

Under these circumstances, according it AEDPA deference, it was not unreasonable for the Appellate Division to hold that petitioner's application to present an expert witness was properly denied. As the Appellate Division observed, "there was sufficient corroborating evidence connecting the defendant to the crimes to obviate the need for expert testimony." *Rodriguez*, 98 A.D.3d at 532. Indeed, such corroborating evidence of the petitioner's guilt may be a significant, if not controlling, factor in establishing the reliability of an eyewitness

4

identification, even if it was otherwise improperly suggestive. *See Brisco v. Ercole*, 565 F.3d 80, 94-95 (2d Cir. 2009); *Kennaugh v. Miller*, 289 F.3d 36, 47-48 (2d Cir. 2002).

## 2. "Show Up" Identification

Petitioner next challenges the admission of eyewitness Marni Ludwig's identification of him after she saw him in a holding cell at the precinct. Ludwig had been the bartender at the Moonshine Bar, which petitioner was accused of robbing. Hearing Tr. at 425 (Page ID #478). According to her testimony at the suppression hearing, she was sitting in the precinct's waiting area after police asked her to arrive that morning. *Id.* at 428-31 (Page ID #481-84). After a few minutes in the waiting area, she looked up and saw petitioner in the holding cell. *Id.* at 432 (Page ID #485). She testified that no one in the precinct directed her attention to the holding cell or made reference to anyone in the cell. *Id.* at 434 (Page ID #487). She further testified that she immediately recognized petitioner as the man who had robbed the bar. *Id.* at 435 (Page ID #488). On seeing the detective investigating the case, Ludwig promptly told him what had happened. *Id.* at 436 (Page ID #489). According to the police officers who testified, the viewing was entirely accidental and a person sitting in the waiting area would only have an extremely limited view into the holding cell that would not usually allow the visitor to see someone in the cell. *Id.* at 388-90, 406 (Page ID #441-43, 459).

Under recent Supreme Court precedent, the Due Process Clause is not violated by an eyewitness identification where "the identification was not procured under unnecessarily suggestive circumstances *arranged by law enforcement*." *Perry v. New Hampshire*, 132 S. Ct. 716, 730 (2012) (emphasis added). In the present case, affirming the trial judge's finding, the Appellate Division held that "the Supreme Court did not err in concluding, based on the hearing record, that the station-house identification at issue was accidental and not the result of police misconduct or questionable police procedures." *Rodriguez*, 98 A.D.3d at 532. As a factual

5

finding, this determination is presumed to be correct. 28 U.S.C. § 2254(e)(1). Thus, according it such deference, the Appellate Division did not unreasonably hold that the admission of the eyewitness identification did not violate the Due Process Clause. *Perry*, 132 S. Ct. at 730.

In any event, Ludwig's identification is supported by enough corroborating evidence to satisfy the demands of due process. The foregoing discussion makes it unnecessary to engage in an extensive analysis of the non-exclusive five-factor test prescribed in *Manson v. Brathwaite*, 432 U.S. 98 (1977). It is enough to say that this "compelling evidence of the reliability of the eyewitness identification" constitutes a sixth factor that should be sufficient to tip the balance in favor of admissibility. *Brisco*, 565 F.3d at 95. In *Kennaugh*, the Second Circuit held that "[a]lthough we have recently rejected this 'sixth factor' approach as a matter of federal law in this circuit, choosing instead a harmless error approach, it seems likely that under the AEDPA, a state court that used a 'sixth factor' analysis would be applying the *Manson* requirements in a perfectly reasonable way." *Kennaugh*, 289 F.3d at 47-48. Since it is now clear that the issue to be resolved is whether the state court decision constituted an *objectively* unreasonable application of clearly established federal law, *see Lockyer v. Andrade*, 583 U.S. 63, 75-76 (2003), it would not seem to matter whether the Appellate Division explicitly relied on the independent corroboration. *Brisco*, 565 F.3d at 96 (Korman, J., concurring). Significantly, the Appellate Division did rely on the corroborating evidence in holding that the defendant was not entitled to present expert testimony on the reliability of eyewitness identification.

    *3.*    *Petitioner's Statements to Police*

Rodriguez also asserts that the trial court erred in not suppressing his confession as involuntary. He claims that the undisputed facts show he was held for more than eight hours without access to food, water, or a bathroom. The record does show that petitioner was held in the precinct for more than eight hours before confessing. Hearing Tr. 147, Mar. 9, 2009, ECF

No. 5-1 (Page ID #198). Of that time, however, petitioner was questioned for less than half an hour before he confessed—the remainder of the time was apparently spent waiting for the lead detective on the case to arrive at the precinct. *Id.* at 94, 100 (Page ID # 145, 151). Moreover, the hearing testimony indicated only that there was no record of petitioner being given food or access to the bathroom, not that he was ever actually denied a request for those accommodations. *Id.* at 173, 242, 410 (Page ID #224, 294, 463). Indeed, petitioner testified at the hearing that he was allowed to use the bathroom upon his request before he confessed, and that he did not ask for food until well after he had made his statement. *Id.* at 621, 641 (Page ID #676, 696).

Petitioner also alleges that he was coerced by police threats to charge Carmen Garcia, his common-law wife, with a crime if he did not confess. According to petitioner's testimony at the suppression hearing, the police told him they were going to charge his wife with robbery because they placed the license plate of her car at the armed robbery, but that if petitioner confessed the police would let his wife go home. *Id.* at 600, 611 (Page ID #655, 666). While testifying at trial, petitioner reiterated this claim, saying that he wrote his confession "for only one reason," to protect his wife. Trial Tr. at 1355 (Page ID #2275). According to the hearing testimony of the lead detective, he had informed petitioner that petitioner's wife, who was already in police custody at that time, would be charged with a crime without any promise of quid pro quo leniency should petitioner confess. Hearing Tr. at 243-44 (Page ID #295-96). The trial judge found that petitioner's "oral and written statements were given after Miranda warnings and were not the result of any duress or coercion on the part of police." Proceedings Tr. 5, June 16, 2009, ECF No. 5-4 (Page ID #823).

While the voluntariness of a confession involves a mixed question of fact and law, the factual findings which underlie a determination of voluntariness are entitled to a presumption of correctness under AEDPA. *Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001). That

presumption extends to a state court's factual determinations that were not explicitly stated but can nonetheless be inferred from the court's legal conclusion. *Whitaker v. Meachum*, 123 F.3d 714, 715 n.1 (2d Cir. 1997); *Smith v. Phillips*, 865 F. Supp. 2d 271, 279 (E.D.N.Y. 2012). Petitioner bears the burden of "rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e). "Only if the material facts were not adequately developed by the state court, or the factual determination is not fairly supported by the record, may the district court set aside the presumption of correctness." *Edwards v. Superintendent, Southport C.F.*, 991 F. Supp. 2d 348, 370 (E.D.N.Y. 2013); *see also Gruttadauria v. Conway*, No. 09-CV-4258 (JS), 2013 WL 5507145, at *10 (E.D.N.Y. Sept. 30, 2013); *Villafane v. Artus*, No. CV-09-5545 (SJF), 2011 WL 6835029, at *41 (E.D.N.Y. Nov. 17, 2011).

The totality of the evidence presented during the trial court's proceedings demonstrated ample support for the finding that the petitioner had not been coerced and that his statements to police were voluntary. Indeed, while he argued in the Appellate Division that his confession was coerced because he was allegedly denied food, water, and the opportunity to use the bathroom while in police custody, he testified at trial that the only reason he confessed was to protect his wife, Trial Tr. at 1355 (Page ID #2275), indicating that the other factors that were relied on in his Appellate Division brief and his habeas petition were not the cause of his confession.

Moreover, even if the detective's remarks "can reasonably be interpreted only as threats to charge Garcia with the robberies if [petitioner] did not make a statement," as petitioner argued, Pet'r's App. Div. Reply Br. 8, ECF No. 8-3 (Page ID #2686), they do not render petitioner's confession involuntary. Although neither the Supreme Court nor the Second Circuit have squarely addressed whether threats to charge third parties amount to coercion, several other circuits and district courts within this circuit have held that "such a threat does not render a confession involuntary *if* the police have probable cause to arrest the family member and thus

8

could lawfully carry out the threat." *United States v. Ortiz*, 943 F. Supp. 2d 447, 456-57 (S.D.N.Y. 2013); *see also United States v. Miller*, 450 F.3d 270, 272 (7th Cir. 2006) *abrogated on other grounds by Kimbrough v. United States*, 552 U.S. 85 (2007); *United States v. Johnson*, 351 F.3d 254, 263 (6th Cir. 2003); *Thompson v. Haley*, 255 F.3d 1292, 1296-97 (11th Cir. 2001); *Allen v. McCotter*, 804 F.2d 1362, 1364 (5th Cir. 1986); *United States v. Serrano*, 937 F. Supp. 2d 366, 376 (E.D.N.Y. 2013); *United States v. Ortiz*, 499 F. Supp. 2d 224, 232-33 (E.D.N.Y. 2007). Indeed, it is unclear to me why the voluntariness of the confession should be affected by whether law enforcement officers had sufficient basis to arrest or charge a third person. In either case, the effect on the interrogated suspect would be the same, even if law enforcement officers did not intend to arrest or charge the third person. *See Miller*, 450 F.3d at 273 ("a modicum of trickery is tolerable during criminal investigations"). In any event, here, the police had probable cause to charge Garcia where her car had been connected to two robberies and an eyewitness saw a female in the vehicle during the first robbery. Hearing Tr. 118 (Page ID #169). Thus, because there was probable cause to arrest and charge Garcia, the threat to do so did not violate petitioner's due process rights.

The Supreme Court's decision in *Rogers v. Richmond*, 365 U.S. 534 (1961), does not stand to the contrary. Although frequently cited for the proposition that police threats to arrest and charge third parties amount to coercion of the defendant, *see, e.g.*, Wayne R. LaFave et al., *at* § 6.2(c) 622, the Supreme Court *held* nothing of the kind. Indeed, the only holding of the Supreme Court was that the trial court in *Rogers* applied the wrong standard in evaluating the admissibility of the confession. *Rogers*, 365 U.S. at 548-49. Significantly, the Supreme Court observed that it "need not, on this record, consider whether the circumstances of the interrogation and the manner in which it was pressed barred admissibility of the confessions as a matter of federal law." *Id*. Moreover, to the extent that language in *Rogers* is helpful to petitioner, it

constitutes dictum, which is not entitled to AEDPA deference because clearly established federal law must be determined based on the holdings, and not the dicta, of the Supreme Court. *See Carey v. Musladin*, 549 U.S. 70, 74 (2006).

On these facts, the trial judge's ultimate legal conclusion that the confession in this case was voluntary does not constitute a violation of clearly established federal law. As such, there is no basis for granting habeas relief on this ground.

## CONCLUSION

The petition is denied. I also deny a certificate of appealability.

**SO ORDERED.**

Brooklyn, New York
December 16, 2014

*Edward R. Korman*
Edward R. Korman
Senior United States District Judge